TODD ANTHONY VINET                 CIVIL ACTION

VERSUS                               NO. 18-9527

BP EXPLORATION & PRODUCTION INC. ET AL.     SECTION "R" (2)

## ORDER AND REASONS ON MOTION

Ordinarily, the court might consider the issue raised in the BP defendants' (collectively "BP") motion for reconsideration, Record Doc. No. 22, so trivial as to merit a single word order: "Denied." In this instance, I cannot do so.[1] For the following reasons, the motion of defendants for reconsideration of this court's ruling on BP's motion to compel discovery responses, Record Doc. No. 22, is DENIED.

This is a garden variety single plaintiff personal injury case. BP's written discovery includes 25 complexly worded interrogatories, which probably deserve scrutiny as to whether their sub-parts are sufficiently "discrete" to survive the numerical limit imposed by Fed. R. Civ. P. 33(a)(1); and 39 broad-ranging requests for production. Record Doc. No. 19-2. In addition, BP has obtained 55 items (not including sub-parts)

---

[1] Permit me to explain myself. I am a Federal Rules nerd. I taught the Federal Rules of Civil Procedure for 20 years as an adjunct in two law schools. For four years, I was the court-appointed Reporter for this court's Civil Justice Reform Act of 1990 Advisory Group, tasked with addressing ways to reduce excessive cost and delay in federal civil litigation, including by controlling discovery. 28 U.S.C. §§ 471- 482. Senior United States District Judge Ivan L.R. Lemelle of this court has said that I am one of only two people he ever heard who are capable of making a discussion of the Federal Rules of Civil Procedure sound interesting. I am approaching a retirement date on which I will have served as a United States Magistrate Judge for more than 25 years and plan to disappear from the world of legal rulings and commentary. This opinion may be my Rules swan song. All this renders me incapable of letting slide without comment what I perceive in these motion papers.

of disclosure information and materials received from plaintiff, Record Doc. No. 22-5, all as specifically agreed upon by the parties and authorized by the court. Record Doc. No. 3 at pp. 4-5. BP's current motion is narrow, focusing exclusively on my refusal on its previous motion to compel to order plaintiff to respond more fully to its Interrogatory No. 16, which states:

> Please identify **any claims or lawsuits filed by you** or on your behalf, any personal injury or illness claims asserted by you or on your behalf (including, **but not limited to**, any insurance or worker's compensation policy or for Social Security or SSI benefits), **any bankruptcy claims or filings,** any bankruptcy trust claims or submissions (e.g. asbestos or silica), personal injury trust claims or submissions, and/or any settlement of any claims (whether at issue in this lawsuit **or otherwise**) asserted by you or on your behalf including describing the nature and outcome of the claims or lawsuits; the parties involved; the date asserted; the title, court, and cause number (if any); the sums received to date as a result of any such lawsuits or claims; **and the attorney(s) who represented you in connection with same.**

Record Doc. No. 19-2 at p. 10 (emphasis added).

Even cursory examination of the face of this interrogatory, without the emphasis I have added, reveals its vast breadth and overreaching scope, extending to plaintiff's entire litigation history as a claimant, without limitation. More depressing, however, is close examination of BP's arguments, the outdated discovery scope standards principally relied upon and its mis-statement of the only ruling BP cites in its papers that was

correctly decided by one of my local colleagues, who applied the proper current legal standard and permitted the defendant in her case to obtain much less than BP seeks here.

I.    <u>Legal Standards</u>

(A)   <u>Reconsideration</u>

The Federal Rules of Civil Procedure do not provide specifically for motions for reconsideration.  <u>Cressionnie v. Hample</u>, 184 Fed. App'x 366, 369 (5th Cir. 2006); <u>Shepherd v. Int'l Paper Co.</u>, 372 F.3d 326, 328 (5th Cir. 2004). The standard of review is not so clear in the Fifth Circuit for deciding whether to grant reconsideration of a discovery order.  District courts in the Fifth Circuit have typically applied Rule 59(e) standards when reviewing motions to reconsider interlocutory orders, especially as to orders that ruled on dispositive motions, in cases in which a final judgment has not yet been entered.  However, some courts in the Fifth Circuit have analyzed motions to reconsider interlocutory orders under Rule 54(b), which provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  Fed. R. Civ. P. 54(b).  These courts have held that

> [m]otions to reconsider that challenge a prior judgment on the merits are
> treated as arising under either Rule 59(e) or Rule 60(b), depending on the
> timing.  A motion to reconsider an interlocutory order is considered under

Rule 54(b), which provides courts "the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient."

Martikean v. United States, No. 3:11-CV-1774-M-BH, 2014 WL 4631620, at *2 (N.D. Tex. Sept. 16, 2014) (quoting Iturralde v. Shaw Group, Inc., 512 F. App'x 430, 432 (5th Cir. 2013)) (citing Cressionnie v. Hample, 184 F. App'x 366, 369 (5th Cir. 2006); Swope v. Columbian Chems. Co., 281 F.3d 185, 193 (5th Cir. 2002); Melancon v. Texaco, Inc., 659 F.2d 551, 553 (5th Cir. Unit A 1981)); accord Lexington Ins. Co. v. ACE Am. Ins. Co., No. 4:12-CV-531, 2016 WL 3251748, at *1 (S.D. Tex. June 14, 2016); Fairley v. Wal-Mart Stores, Inc., No. 15-0462, 2016 WL 2992534, at *1-2 (E.D. La. May 24, 2016) (citing Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 173 (5th Cir. 1990)); Scogin v. Tex. Eagle Ford Shale Magazine, No. 2:14-CV-478, 2016 WL 632031, at *1 (S.D. Tex. Feb. 16, 2016) (citing Stoffels ex rel. SBC Tel. Concession Plan v. SBC Commc'ns, Inc., 677 F.3d 720, 727-28 (5th Cir. 2012)).

Under Rule 54(b),

"[d]istrict courts have considerable discretion in deciding whether to grant a motion to reconsider an interlocutory order. The exact standard applicable to the granting of a motion under Rule 54(b) is not clear, though it is typically held to be less exacting than would be a motion under Rule 59(e), which is in turn less exacting than the standards enunciated in Rule 60(b)." Livingston Downs Racing Ass'n, Inc. v. Jefferson Downs Corp., 259 F. Supp. 2d 471, 475 (M.D. La. 2002). Under this standard, "the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change

4

in or clarification of the substantive law." Estate of Henson v. Wichita Cty., 988 F. Supp. 2d 726, 730 (N.D. Tex. 2013) (quoting Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 185 (5th Cir. 1990)). Rule 54(b), however, "does not mean that the Court has carte blanche to reconsider newly presented theories of liability or the lack thereof." Livingston, [259] F. Supp. 2d at 480; see also id. at 481 ("Any position is supportable by boundless arguments, and lawyers are trained and paid to find those arguments. Judicial economy counsels against reconsidering an issue each time someone presents a new argument.").

Scogin, 2016 WL 632031, at *1; accord Martikean, 2014 WL 4631620, at *2 (citing Baisden v. I'm Ready Prods., Inc., 693 F.3d 491, 506 (5th Cir. 2012); Zarnow v. City of Wichita Falls, 614 F.3d 161, 171 (5th Cir. 2010)).

Given the absence from the Federal Rules of Civil Procedure or clear guidance from the Fifth Circuit on the standard of review for a motion to reconsider a nondispositive, interlocutory order,

[t]he general practice of courts in [the Eastern District of Louisiana] has been to evaluate Rule 54(b) motions to reconsider under the same standards that govern Rule 59(e) motions to alter or amend a final judgment. See, e.g., Castrillo [v. Am. Home Mortg. Serv'g, Inc., No. 09-4369 R, 2010 WL 1424398, at *3 (E.D. La. Apr. 5, 2010) (Vance, J.)]; Rosemond v. AIG Ins., [No. 08-1145,] 2009 WL 1211020, at *2 (E.D. La. May 4, 2009) (Barbier, J.). A Rule 59(e) motion "calls into question the correctness of a judgment," and courts have considerable discretion in deciding whether to grant such a motion. Tex. Comptroller of Pub. Accounts v. Transtexas Gas Corp., 303 F.3d 571, 581 (5th Cir. 2002). In exercising this discretion, courts must carefully balance the interests of justice with the need for finality. Courts in the Eastern District of Louisiana have generally considered four factors in deciding a motion under the Rule 59(e) standard: (1) the motion is necessary to correct a manifest error of law or fact upon which the judgment is based; (2) the movant presents newly discovered or

previously unavailable evidence; (3) the motion is necessary in order to prevent manifest injustice; or (4) the motion is justified by an intervening change in controlling law.

Importantly, Rule 54(b) motions, like those under Rules 59(e) and 60(b), are not the proper vehicle for rehashing evidence, legal theories, or arguments. Simon v. United States, 891 F.2d 1154, 1159 (5th Cir. 1990). Instead, they "serve the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." Waltman v. Int'l Paper Co., 875 F.2d 468, 473 (5th Cir. 1989). Reconsideration, therefore, is not to be lightly granted, as "[r]econsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly" and the motion must "clearly establish" that reconsideration is warranted. Templet v. Hydro Chem Inc., 367 F.3d 473, 478-79 (5th Cir. 2004).

Moreover, it is well-settled that motions for reconsideration should not be used to raise arguments that could, and should, have been made before entry of an order or to re-urge matters that have already been advanced by a party. See Browning v. Navarro, 894 F.2d 99, 100 (5th Cir. 1990). When there exists no independent reason for reconsideration other than mere disagreement with a prior order, reconsideration is a waste of judicial time and resources and should not be granted. Livingston Downs Racing Ass'n v. Jefferson Downs Corp., 259 F. Supp. 2d 471 (M.D. La. 2002).

Fairley, 2016 WL 2992534, at *2.

Of course, Rule 59(e) provides that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). BP's motion was not filed within this time period. My prior order was entered on May 29, 2019. Record Doc. No. 20. BP's motion for reconsideration was filed 37 days later, on July 5, 2019. Perhaps it should be denied for that reason.

Nevertheless,[2] considering all of the foregoing standards and the particulars of BP's motion papers as discussed below, I find that BP has fallen far short of establishing any ground for reconsideration. BP relies upon outmoded and/or inapplicable legal standards. In the one instance in which it cites a decision applying the correct legal standard, it mis-states the court's ruling.

(B)     The Shrunken Scope of Discovery
        in the 2015 Amendments to Rule 26(b) Apply

The 2015 Amendments to Fed. R. Civ. P. 26(b), effective as to all cases like this one filed after December 1, 2015, shrunk the scope of permissible discovery. The parameters established by Fed. R. Civ. P. 26(b)(1) are that permissible discovery extends only to that which is non-privileged, relevant to claims and defenses in the case and within the applicable Rule's proportionality limits. Proportionality analysis includes consideration of various factors, including the importance of the issues at stake, the amount in controversy, the parties' relative access to information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

The amendment incorporated the proportionality component into the threshold definition of the scope of discovery itself and imposed on the parties **and the court** "a

---

[2] See footnote 1 supra.

**collective responsibility** to consider the proportionality of all discovery. . . ." <u>Federal Civil Judicial Procedure and Rules</u> at p. 154-55 (quoting Advisory Committee Notes to the 2015 Amendments to the Federal Rule of Civil Procedure)(Thomson Reuters 2019 ed.)(hereinafter "Official Advisory Committee Notes")(emphasis added). Emphasis on the court's <u>own</u> obligation to police excessive discovery had commenced in the Rules amendments process decades earlier. "The 1983 [Official Advisory] Committee Note states that the [then] new provisions were added 'to deal with the problem of over-discovery. The objective is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery . . . [and] **to encourage judges to be more aggressive** in identifying and discouraging discovery overuse." Official Advisory Committee Notes at p. 154.

Congress accelerated the pace of shrinking the permissible scope of discovery as a means of combating excessive cost and delay in federal civil litigation when it enacted the Civil Justice Reform Act of 1990. 28 U.S.C. § 471 <u>et seq.</u> ("CJRA"). Among the recommendations of Congress to courts for "litigation management and cost and delay reduction" were "early and ongoing control of the pretrial process through involvement of a judicial officer in – . . . **controlling the extent of discovery**. . . . " 28 U.S.C. §473(a)(2)(C)(emphasis added). Consistently with the CJRA, the 1993 Amendments to the Federal Rules reiterated that "changes" in then new Rule 26(b)(2) were made "to

enable **the court to keep tighter rein** on the extent of discovery." Official Advisory Committee Notes at p. 145. The current Rule incorporates this view in the following requirement imposed on the court: **"[O]n its own, the court must limit" discovery when it "is outside the scope permitted by Rule 26(b)(1)."** **Fed. R. Civ. P. 26(b)(2)(C)(iii)**(emphasis added).

Thus, the 2015 Amendments were the culmination of a process of shrinking the scope of discovery and encouraging the courts actively to do so that began in Rules amendments dating back more than 35 years. Gone for good were the broad-ranging old standards that permitted discovery of information "relevant to the <u>subject matter</u>" of a case, which was first eliminated from the Rule by the 2000 Amendments after discussions and proposals that it be deleted dating back to 1978. Official Advisory Committee Notes at p.148. Gone for good were the days when a judge might think that "let 'em have it" was the best approach to discovery.

With particular significance to BP's arguments in this motion, the 2015 Amendments also eliminated from the Rule 26(b)(1) scope of permissible discovery a phrase that BP and several of the cited decisions upon which it relies applied erroneously (as I sometimes mistakenly did myself in the ancient past of my quarter century as a magistrate judge). "The former provision for discovery of relevant but inadmissible information that appears **'reasonably calculated to lead to the discovery of admissible**

**evidence' is also deleted.** The phrase has been used by some, **incorrectly,** to define the scope of discovery. As the Committee Note to the 2000 amendments observed, use of the 'reasonably calculated' phrase to define the scope of discovery 'might swallow any other limitation on discovery.' The 2000 amendments sought to prevent **such misuse** by adding the word 'Relevant' at the beginning of the sentence, making clear that 'relevant' means within the scope of discovery as defined in the subdivision . . . .' The 'reasonably calculated' phrase has continued to create problems, however, **and is removed** by these [2015] amendments." Official Advisory Committee Notes at p.155 (emphasis added).

Evaluating Interrogatory No. 16 against these standards leads to the conclusion that BP's motion and arguments are meritless because the interrogatory is excessive, seeks much that is not relevant to the claims and defenses, and is far beyond what is necessary and beneficial to resolution of this case from a proportionality perspective. The claims and defenses and proportionality focus of this case are limited to the narrow matters asserted in the pleadings. Specifically, the issues that may permissibly be litigated in this "BELO" case arising from the Back-End Litigation Option provisions of the court-approved Deepwater Horizon Medical Benefits Class Action Settlement Agreement are greatly restricted by the terms of that agreement, including its pre-lawsuit notice, administrative, mediation consideration and other requirements.

Consistently with the Settlement Agreement, plaintiff's claims in this case are strictly restricted to the particular medical conditions he alleges were caused by his exposure to the flotsam and detritus he was tasked to clean up as a result principally of BP's negligence in causing the Deepwater Horizon explosion and massive oil spill. Those conditions are limited to "Chronic Rhinosinusitis, Chronic Damage to Conjunctiva, Chronic Contact Dermatitis at the Site of Contact, Chronic Eczematous Reaction at the Site of Contact, and Chronic Damage to Cornea." Record Doc. No. 1 (Complaint at p. 3, ¶12).

As to relevance, it is inconceivable that all of the universe of plaintiff's possible litigation and generalized claims history is relevant to these claims or BP's defenses. How could some prior lawsuit about a broken foot suffered in a vehicular collision, or an eviction proceeding for failure to pay rent, or a litigated dispute with municipal authorities over whether the height of plaintiff's backyard fence complies with a local ordinance possibly be relevant to claims that exposure to the results of BP's Deepwater Horizon oil spill disaster caused eye, sinus and skin conditions? No malicious prosecution, legal frivolousness or similar litigation-based claims or defenses are asserted. How could the identity of a lawyer who represented plaintiff in some prior case be relevant to anything? The defenses asserted in BP's answer, Record Doc. No. 4, are numerous and sometime vague. Lack of standing on bankruptcy grounds, plaintiff's alleged propensity to file lawsuits or other similar defenses are not asserted. Perhaps some sub-set of what BP asks

about in Interrogatory No. 16 might be relevant to its defenses. For example, if the interrogatory were limited to prior lawsuits asserting injuries to skin, sinuses or eyes like those asserted in this case, relevance to BP's preexisting injury or causation defenses might be established, and only proportionality would then have to be evaluated. BP's Interrogatory No. 16, however, is **not** so appropriately limited to what might be relevant.

As to proportionality, weighing the various factors militates strongly against permitting the broad discovery sought in Interrogatory No. 16. The issues at stake in this case are important. This is one – though only one – of more than 4,000 BELO cases filed by individual workers like plaintiff who attempted to clean up BP's Deepwater Horizon mess. However, the importance of <u>all</u> of the litigation history information sought in Interrogatory No. 16, including especially its importance to resolving the key medical causation and damages issues, is limited. BP has already been permitted to conduct broad-ranging discovery and received substantial disclosures from plaintiff concerning his <u>medical</u> history and records. This medical information – not plaintiff's legal history – is what is important to resolution of the issues. The burden of responding to this far-flung question, especially to an individual person of ordinary resources like plaintiff, appears substantial, in light of the vast scope of the interrogatory, and outweighs the likely minimal benefit to resolution of the issues. BP's resources are staggeringly more substantial than plaintiff's. The precise amount in controversy is unknown. In the only interrogatory answer

addressing damages that appears in the record, plaintiff states that "damages are still being calculated." Record Doc. No. 19-3 at p. 9. However, the amount in controversy appears small from what little about it appears in the current record. No matter its epic source, this is one case, a single-plaintiff personal injury case in which plaintiff complains only about the skin, sinus and eye problems enumerated in his complaint. The record reflects that plaintiff had incurred only $150 in medical bills for treatment of his particularly alleged conditions at the time he answered BP's interrogatories directed to that issue, Record Doc. No. 19-3 at pp. 8-9, a time almost nine years after the oil spill and cleanup efforts. In other interrogatory answers about lost wages, plaintiff states that his "damages are still being calculated and will be supplemented once those calculations are complete" but that he is currently employed "to present" in sales Record Doc. No. 19-3 at pp. 9, 13. Continued employment is certainly commendable and advances plaintiff's duty to mitigate his damages, but necessarily truncates the amount of lost earnings that might be in controversy. Together with whatever limited amount might be recoverable for general damages resulting from skin, eye and sinus irritations that sometimes occur even in the absence of exposure to oil spill and cleanup materials, the amount in controversy must be anticipated to be relatively small. Evaluating these factors weighs against a finding that Interrogatory No. 16 is proportional to the needs of the case.

Thus, Interrogatory No. 16 is the kind of proposed discovery that **"on its own, the court must limit" because it "is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(iii).**

II.    <u>BP's Arguments</u>

The arguments advanced by BP in this motion belie any understanding of the history of the purposeful shrinking of the scope of permissible discovery under Rule 26(b) outlined above and the working of the post-2015 standard that actually applies to Interrogatory No. 16, as opposed to the outmoded, inapplicable and – in one respect – mis-stated – case law upon which BP relies.

BP first argues that "Vinet did not object to this interrogatory; instead, he partially responded" and then "did not oppose BP's motion" by filing the opposition memorandum required by Local Rule 7.2. Record Doc. No. 22-1 at p. 2. BP concludes that plaintiff's objections were therefore waived under Fed. R. Civ. P. 33(b)(4) and that Vinet did not sustain "his burden of proving that the interrogatory lacked relevance." Record Doc. No. 22-1 at p. 4 (citing <u>Allen-Pieronis v. SW Corr., LLC</u>, 2016 WL 1750325, at *4 (N.D. Tex. May 2, 2016)). All true enough, as far as it goes. It is a shame that plaintiff and his counsel have been less than entirely attentive to this case. Perhaps they have made their own cost-benefit analysis and economic determination about how much time, money and effort they should expend on the case, given what appears to be

the small amount in controversy. <u>See</u> Robert G. Bone, <u>Civil Procedure: The Economics of Civil Procedure</u> at pp. 20-40 (Foundation Press 2003)(describing three principal economic considerations of lawyers and litigants in deciding whether to pursue litigation as the likely amount of recovery, the probability of success and the costs, including "sunk cost").

However, the fact that plaintiff has abdicated his role in controlling excessive discovery does not authorize the court to shirk its own responsibility in this regard. Even before the 2015 Rules Amendments, the court always retained discretion to decline to compel production of requested discovery "when the request far exceeds the bounds of fair discovery, even if a timely objection has not been made." <u>Schooler v. Wal-Mart Stores, Inc.</u>, 2015 WL 4879434, at *1 (E.D. La. Aug. 14, 2015); <u>Meche v. Maintenance Dredging, Inc.</u>, 2012 WL 519882, at *2 (E.D. La. Feb. 16, 2012) (citing <u>Fifty-Six Hope Road Music, Ltd. v. Mayah Collections, Inc.</u>, 2007 WL 1726558, at *4 (D. Nev. June 11, 2007); <u>Lucero v. Martinez</u>, 2006 WL 1304945, at *2 (D.N.M. Mar. 11, 2006); <u>Kolenc v. Bellizzi</u>, 1999 WL 92604, at *3 (S.D.N.Y. Feb. 22, 1999)). The 2015 Amendments enshrined that concept in Rule 26 itself and made it the court's imperative. I repeat: "On motion **or on its own, the court must** limit the frequency **or extent** of discovery . . . if it determines that . . . (iii) the proposed discovery is outside the scope permitted by Rule

26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(iii). Interrogatory No. 16 demands this kind of court action.

BP next argues that the entirety of plaintiff's litigation history sought in Interrogatory No. 16 is relevant because his allegations that he was injured by his work in the effort to clean up the environmental mess caused by BP's negligence "put at issue many facts **that could be revealed** by Vinet's prior legal history, . . ." Record Doc. No. 22-1 at p. 3. This argument ignores the current requirement that all discovery must be both relevant and proportional and constitutes the essence of the kind of "reasonably calculated to lead to the discovery of admissible evidence" that was purposefully deleted and removed from Rule 26(b)(1) by the 2015 Amendments because of its past erroneous application that fed excessive over-discovery. The reported decisions cited by BP in support of this argument, <u>E.E.O.C. v. Area Erectors, Inc.</u>, 247 F.R.D. 549, 553 (N.D. Ill. 20**07**)[3] and <u>Belaviles v. KKW Trucking, Inc./Furniture Transp. Sys., Inc.</u>, 2008 WL 11389217, at *2 (D. Nev. Sept. 26, 20**08**), are both more than a decade old and expressly

---

[3]BP's misleading insinuation, Record Doc. No. 22-1 at p. 3 n. 6, that the <u>Area Erectors</u> decision should be relied upon here because I cited it in my previous order, Record Doc. No. 20 at p. 4, misstates the reason for and context of its prior citation. I cited <u>Area Erectors</u> as an example of another court's decision, <u>even under the much broader scope</u> of discovery permitted by Rule 26(b)(1) in 2007, to **deny** a discovery request similar to BP's objectionable in part Interrogatory No. 17 seeking plaintiff's arrest records, as opposed to his criminal conviction records. If arrest records in a case like this one were not discoverable under the broader old standard, they certainly are not discoverable in a case like this one under the current applicable standard.

rely upon the now-deleted "reasonably calculated to lead" language that is no longer in the Rule 26(b)(1) scope of permissible discovery and does **not** apply in this post-2015Amendments case.

BP also argues that "this Court has previously allowed the discovery of prior claims through the court-approved Plaintiff Profile Form ("PPF"), which requires BELO plaintiffs to respond to a similar question: 'Have you ever filed a lawsuit or made a claim alleging personal injury, *other than* the present lawsuit?'" Record Doc. No. 22-1 at p. 3 (emphasis in original). This argument is off-base for several reasons. First, the PPF is a mandatory <u>disclosure</u>, not discovery. Disclosure and discovery are two different and distinct procedures. Record Doc. No. 3 at pp. 4-5. As the judge who oversaw and entered the Case Management Order providing for the PPF disclosure, I know that it was approved and permitted only because the parties, through their counsel, agreed to it after substantial discussion and negotiation and after the court rejected and substantially restricted their broader suggestions for "lengthy consolidated discovery procedures." <u>Id.</u> at p. 2. Second, the PPF question itself is restricted and limited to personal injury claims <u>only</u>, as opposed to the much broader Interrogatory No. 16 relating to plaintiff's <u>entire</u> lawsuit history. Third, even if the PPF could be viewed as discovery as opposed to disclosure, the portion of Interrogatory No. 16 relating to personal injury lawsuits should be prohibited under Fed. R. Civ. P. 26(b)(2)(C)(i) and (ii) because it "is unreasonably

cumulative or duplicative" of the PPF question, which has provided BP with "ample opportunity to obtain the information. . . ."

BP also argues that the portion of Interrogatory No. 16 relating to bankruptcy claims is permissible discovery because a separate BELO plaintiff in one of the thousands filed to date had filed a bankruptcy proceeding, that he had not disclosed on his PPF, and was found to be asserting a claim that rightly belonged to his bankruptcy estate. The case was ultimately dismissed with prejudice by voluntary stipulation of dismissal filed by the plaintiff. Bradberry v. BP Expl. & Prod., Inc., C.A. No. 17-4686-H (5)(E.D. La.), Record Doc. Nos. 25, 34, 37). BP apparently suspects a similar situation in this case because its own investigation has revealed two civil lawsuits filed by Vinet that he did not disclose on his PPF. Record Doc. No. 22-1 at pp. 3-4, n. 7, 8. It argues that "BP should be permitted to investigate Vinet's lack of candor." Id. at n. 7.

BP's argument in this regard is unavailing for two reasons. First, as discussed above, this is the epitome of "reasonably calculated to lead to" discovery, which has now been deleted from Rule 26(b)(1). Even if this out-dated standard applied, it is not reasonable to conclude that, because one of more than 4,000 BELO plaintiffs improperly pursued a claim rightly belonging to his bankruptcy estate, discovery along these lines should be permitted in all BELO cases. Second, nothing about this ruling impedes BP's ability "to investigate Vinet's lack of candor." Private investigation is separate from

discovery, and parties to litigation are free to invest their own time and money in such investigation apart from the discovery process. Just as BP has already done as to civil lawsuits, it is free to check the public records of the likely bankruptcy court where Vinet might have filed for bankruptcy protection in the "more convenient, less burdensome, or less expensive" manner contemplated by Fed. R. Civ. P. 26(b)(2)(C)(i). I did. A public records search that took less than ten minutes revealed that Vinet in fact filed for Chapter 13 bankruptcy protection in this district in 2005, a case that was closed in 2008. <u>In Re. Todd Anthony Vinet</u>, Bkty. No. 05-12716 (E.D. La.).

Finally, the argument advanced by BP that "Courts in this district have also found that discovery of prior claims may reveal a pattern of filing lawsuits," Record Doc. No. 22-1 at p. 4, n. 8, is both unpersuasive and annoying. Two reported decisions, fittingly placed in a footnote, are cited in this argument. As discussed above, the citation to <u>McLeod, Alexander, Powel, & Apfel, Inc. v. Quarles</u>, 894 F.22d 1482, 1484 (5th Cir. 1990), for this proposition is inapplicable because it relies upon a two-decades-old Rule 26(b)(1) standard that no longer exists.

BP's citation to <u>Greater New Orleans Fair Housing Action Ctr., Inc. v. Dorian Apartments, LLC</u>, 2016 WL 6157534, at *5 (E.D. La. Oct. 24, 2016)(hereafter "<u>GNO</u>"), the only cited decision that accurately applies the currently applicable Rule 26(b)(1) standard, distorts the actual ruling and reasoning of my sister magistrate judge of this

court. In GNO, "defendant requested that Plaintiffs identify **all** lawsuits 'commenced after January 1, 2001 in which [plaintiff] was a party." Id. (emphasis added). The magistrate judge cited decisions of other district courts **narrowing – not** permitting – overly broad requests for all lawsuits of the type made by the GNO defendant – and like the one made by BP in this case. The magistrate judge noted that the case before her was a discrimination suit. She held that "prior discrimination lawsuits (even non-housing discrimination lawsuits) could be relevant," but she specifically found that "Defendants have failed to present any reason why all other lawsuits by Plaintiffs are relevant to their claims." Id. (emphasis added). As to proportionality, she noted that plaintiffs' counsel indicated at oral argument that production of prior discrimination lawsuits would not be overly burdensome. Thus, she ordered production of a list of all previous discrimination lawsuits for the requested time period, **not** all of plaintiff's prior claims.

III.     Conclusion

I reiterate my prior finding that Interrogatory No. 16 is overly broad on its face, that it seeks much that is "outside the scope permitted by Rule 26(b)(1)," and that it must not be allowed and need not be answered, as written. Fed. R. Civ. P. 26(b)(2)(C)(iii). None of the factors justifying reconsideration have been demonstrated. The motion for reconsideration is DENIED.

New Orleans, Louisiana, this _____6th_____ day of August, 2019.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE